**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Nyrtistene Williams**,

       *Plaintiff*,

v.                                                        **Case No. 3:16-cv-207
Judge Thomas M. Rose**

**Trotwood Madison City Schools,** *et al.*,

       *Defendants*.

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a), DOC. 24, DISMISSING THE ACTION OF PLAINTIFF WITH PREJUDICE, AND TERMINATING THIS CASE**

---

Before this Court is a motion for summary judgment under Federal Rule of Civil Procedure (F.R.C.P.) 56(a). Doc. 24. Plaintiff Nyrtistene Williams ("Williams") has filed a complaint seeking a judgment against Defendants including compensatory and punitive damages. Doc. 1. Williams alleges Defendants retaliated against her for advocating for changes in individualized education plans for two students by not renewing her employment as an Intervention Specialist with Trotwood Madison City School District ("Trotwood Madison"). *Id.* Following this Court's granting of a partial motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6) on behalf of Defendants Trotwood Madison City School District Board of Education, Eddie Sample, Kevin Bell, Tracey Mallory, and Jody McCurdy ("Defendants"), Doc. 12, Defendants now seek a motion for summary judgment on Plaintiff's remaining claim related

1

to an alleged violation of § 504 of the Rehabilitation Act of 1973. 29 U.S.C.A. § 794 (West 2016).

I. Background

Plaintiff Williams is a former employee of Trotwood Madison City School District, having worked as an intervention specialist from approximately 2013 to 2015. Doc. 1. Defendant Trotwood Madison City School District Board of Education is the governing body responsible for personnel decisions throughout Trotwood Madison City School District and is a recipient of federal funds subject to, among other things, the Rehabilitation Act of 1973. Doc. 1, ¶ 2; Doc. 13, ¶ 2. Defendant Eddie Sample is and was at all times relevant to this action a Special Education Supervisor for Trotwood Madison City School District. Doc. 1, ¶ 3; Doc. 13, ¶ 3. Defendant Kevin Bell is and was at all times relevant to this action the Superintendent of Trotwood Madison City School District. Doc. 1, ¶ 4; Doc. 13 ¶ 4. Defendant Tracey Mallory is and was at all times relevant to this action the Principal of Westbrooke Village Elementary School ("Westbrooke") within the Trotwood Madison City School District. Doc. 1, ¶ 5; Doc. 13, ¶ 5. Defendant Jody McCurdy was at all times relevant to this action the Director of Special Education for Trotwood Madison City School District. Doc. 1, ¶ 6; Doc. 13, ¶ 6. Plaintiff and all Defendants reside in the state of Ohio, Doc. 1, ¶¶ 1-6; Doc. 13, ¶¶ 2-6, and the present action is before this Court as a matter of federal question jurisdiction resulting from Plaintiff's claim under the Rehabilitation Act of 1973. Plaintiff's second claim arose out of the First Amendment of the Constitution of the United States, however this Court previously granted Defendants' partial motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6), thereby discharging Plaintiff's First Amendment claim. Doc. 12. Defendants' motion for summary judgment

pursuant to F.R.C.P. 56(a) before this Court concerns Plaintiff's remaining claim under the Rehabilitation Act of 1973. Doc. 24.

Plaintiff began the 2013-2014 school year as an intervention specialist at Trotwood Madison Middle School, but was eventually transferred to Madison Park Elementary School. Doc. 27 PageID 226. During the 2014-2015 school year Plaintiff was employed as an intervention specialist for fourth grade students at Westbrooke Village. Doc. 27, PageID 238. Defendant Trotwood Madison is a recipient of federal funds in furtherance of its provision of academic support and services on behalf of disabled students. Doc. 13, ¶ 2; Doc. 27, PageID 219. Plaintiff alleges that Trotwood Madison is subject to the provisions of the Rehabilitation Act of 1973, specifically § 504, via receipt of these federal funds. Doc. 1, ¶ 2.

Intervention specialists provide academic support to disabled students. Doc. 27, PageID 218; Doc. 28, PageID 296-97. In order to most effectively support the academic endeavors of their students, intervention specialists attempt to provide them with educational settings that constitute the least restrictive environment (LRE) for that particular student. Doc. 27, PageID 223. One of the ways in which intervention specialists tailor their support to the needs of their students is by conducting annual individualized education plan (IEP) meetings in order to ensure that the student is receiving the resources necessary to succeed academically in light of their disability. Doc. 28, PageID 292-94. The individuals who attend an IEP meeting are those who are part of a student's IEP team, typically consisting of the student's teacher, intervention specialist, parents, a district representative, and any other specialized services that the student's disability may require (speech therapist, physical therapist, etc.). Doc. 28, PageID 293. A student's IEP team meets at least once per year and works to collaboratively discuss the student's evolving needs and revise or maintain the IEP accordingly. Doc. 28, PageID 295. The

intervention specialist is ultimately responsible for drafting a student's IEP, however it is based on the IEP team discussions during the IEP meeting. Doc. 27, PageID 214.

On February 15, 2015, Plaintiff sent an email to Defendant Bell and Trotwood Madison City School District Human Resources Manager Gerald Cox concerning perceived issues she saw in the school providing allegedly inadequate resources and services to two of the students assigned to her in her capacity as an intervention specialist. Doc. 30, PageID 348, 351. Additionally, Plaintiff alleges that she also made complaints to Defendant Mallory, Defendant Sample, and Defendant McCurdy concerning deficiencies in the school's provision of resources to disabled students. Doc. 1, ¶ 34.

In regards to Student A, Plaintiff alleges that she had expressed concerns about the fulfillment of Student A's LRE. Doc. 1, ¶ 18. Defendants in turn assert that Plaintiff was notified that her concerns could be discussed at Student A's approaching IEP meeting that was to take place on March 19, 2015. Doc. 24, PageID 125. In regards to Student B, Plaintiff contends that she was asked by Defendant Sample and Deborah Nunley to illegitimately backdate an IEP document relating to an IEP meeting for Student B. Doc. 1, ¶ 19. Defendants counter that this was not a backdating request and that it was made in order to correct an error in the document, specifically that Plaintiff had recorded the IEP meeting date as May 7th or May 8th of 2015, when it had actually occurred on May 13, 2015. Doc. 24, PageID 126.

During their first four years of employment with Trotwood Madison City School District, intervention specialists and all other certified teachers are given one-year contracts that are subject to annual renewal or non-renewal by the School Board. Doc. 27, PageID 229. Employees are subject to individual evaluation by their supervisor reporting to the superintendent, who then makes a recommendation to the School Board regarding renewal or

non-renewal of that employee. Doc. 27, PageID 229-230. The supervisor responsible for evaluating Ms. Williams and Westbrooke intervention specialists at-large was the building's principal, Tracey Mallory. Doc. 27, PageID 231-232; Doc. 28, PageID 292.

At the conclusion of the 2014-2015 school year, Defendant Mallory recommended that Plaintiff Williams' contract be non-renewed, which was ultimately adopted by Superintendent Bell and the Trotwood Madison School Board. Doc. 28, PageID 300. Plaintiff's remaining claim alleges that her non-renewal constitutes retaliation by her employer that is prohibited by Title VI (42 U.S.C. § 2000e-3(a)) and § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)). Doc. 30 PageID 351-52.

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Motions for summary judgment are to be assessed a light most favorable to the non-moving party. *Surita v. Arvinmeritor, Inc.*, No. 5:16-cv-0622017, WL 4891005 at *2 (W.D. Ky. 2017). As to the materiality portion of the rule, summary judgment cannot be granted if there exists a dispute concerning "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As to the "genuine dispute" portion of the rule, the factual issue between the parties must be one which "may reasonably be resolved in favor of either party." *Id.* at 250. In other words, evidence amounting to a ruling of summary judgment is that which "would require a directed verdict for the moving party." *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 624 (1944).

The Court's role in evaluating a motion for summary judgment is not to make findings of fact, but instead to perform a "threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. The initial burden in a motion for summary judgment belongs to the moving party, who must demonstrate that there is "no genuine issue of material fact." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995). Once that threshold is met, in order to defeat the motion for summary judgment, the non-moving party must produce "evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Id.*

§ 505(a)(2) of the Rehabilitation Act of 1973 outlines remedies for "any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C.A. § 794(a). § 505(a)(2) also allows parties to seek redress via Title VI of Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.). Title VI primarily addresses discrimination in federally funded programs based on "race, color, or national origin" (Id.), however an anti-retaliation provision has since been established via regulatory enactment, which states that "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual…because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part [Title VI]." 34 C.F.R. § 100.7(e). Although Plaintiff, in its filings with the Court to this point, has not directly referenced this incorporated portion of Title VI, her present claim before the Court is most cognizable under this subdivision of Title VI.

### B. Analysis

In order to establish a prima facie case of retaliation in violation of Title VII, Plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) this exercise of protected

rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff…and (4) there was a causal connection between the protected activity and the adverse employment action." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). The burden of proof necessary to establish a prima facie case is lower than it is to ultimately win a judgment (*E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)), and the amount of evidence necessary to meet this prima facie threshold is "minimal." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

Title VII retaliation claims containing circumstantial evidence undertake the same burden shifting analysis that occurs with Title VII discrimination claims. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008); *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Accordingly, if Plaintiff is able to establish a prima facie case of retaliation, the burden then shifts to Defendant to "rebut the presumption of [retaliation] by producing evidence that the plaintiff was rejected…for a legitimate, [non-retaliatory] reason." *Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)*; *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1993).

If Defendant is able to meet this burden, Plaintiff has the ability to demonstrate that Defendant's proffered reason(s) for Plaintiff's non-renewal are merely pretext, and "not the true reason for the employment decision." *Burdine*, 450 U.S. at 25; *See Manzer*, 29 F. 3d at 1082. In doing so, Plaintiff can successfully rebut Defendants' reason(s) by showing that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Imwalle*, 515 F.3d at 545; *See Manzer*, 29 F.3d at 1084.

Plaintiff asserts that her non-renewal by Trotwood-Madison satisfies all of the elements necessary to establish a prima facie case of retaliation. Doc. 30, PageID 352. Plaintiff contends that her email to Defendant Bell and Mr. Gerald Cox regarding deficiencies in the school's provision of special education services along with the alleged request to backdate an IEP document was a protected activity under the Rehabilitation Act of 1973. Doc. 30, PageID 348-49. Plaintiff further alleges that defendants were aware of the protected activity, that her non-renewal constituted an adverse employment action, and that there is a causal connection between her engagement in the protected activity (the email) and the adverse employment action (her non-renewal). Doc. 30, PageID 352. Plaintiff also argues that Defendants are not able to provide a legitimate and non-retaliatory reason for her non-renewal. Id.

Defendants concede that Plaintiff's email constitutes protected activity under the statute and that her non-renewal qualifies as an adverse employment action, and so she is able to satisfy the first and third prongs of the Title VII retaliation standard. Doc. 24, PageID 128. However, Defendants contend that the School Board is the ultimate decision-maker as to the contracts of Trotwood Madison School District employees, and that Plaintiff has failed to prove that her protected activity was known by members of the School Board. Id.; Doc. 31, PageID 360. Additionally, Defendants argue that Plaintiff has also failed to produce evidence of a causal connection between her engagement in the protected activity and the non-renewal of her contract. Doc. 24, PageID 128. Furthermore, Defendants argue that even if Plaintiff is able to establish a prima facie case of retaliation, that Defendants had legitimate, non-retaliatory reasons for the non-renewal of Plaintiff's contract, particularly her alleged conflicts with fellow staff members. Doc. 24, PageID 128-29. Defendants also contend that Plaintiff has not produced

evidence establishing individual liability on behalf of the individual Defendants in this case, and that as a result they are entitled to summary judgment in their favor. Doc. 31, PageID 358-59.

Because Defendants concede the first and third prongs of the prima facie retaliation analysis, Plaintiff must further demonstrate that her protected activity was known by Defendants, and that there existed a causal connection between the email she sent and her ultimate non-renewal.

A claimant need not provide direct evidence of an employer's knowledge of plaintiff's engagement in a protected activity, as the Sixth Circuit has ruled that "a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). Furthermore, the Sixth Circuit has allowed circumstantial evidence leading to the inference of an employer's knowledge of a protected activity to pass the threshold necessary to establish this element of a prima facie showing. *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999). While the individual members of the Trotwood-Madison School Board may have been unaware of the specific content of the February 15, 2015 email, the School Board's reliance on superintendent recommendations when deciding contract renewals (*See* Doc. 27, PageID 230) provides sufficient evidence to demonstrate that the School Board had awareness of Plaintiff's participation in a protected activity. *Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 404 (6th Cir. 2008) ("remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, were relevant" to whether an ultimate decision-maker's decision to terminate was discriminatory or retaliatory.) (citing *Wells v. New Cherokee Corp.*, 58 F.3d 233, 237-38 (6th Cir. 1995)).

Plaintiff is thus able to establish the knowledge element of a prima facie case of retaliation under Title VII.

In order to demonstrate a causal connection between the protected activity and adverse employment action, a claimant must "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). Although the temporal proximity between a plaintiff's participation in a protected activity and an adverse employment action is not the sole indicator of causality, when combined "other indicia of retaliatory conduct," it may lead to a finding of a possible causal connection. *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 737 (6th Cir. 2006). The temporal proximity between Plaintiff's email in February and her non-renewal at the end of the school year evinces the possibility that a retaliatory motive was present. Additionally, Defendant Mallory's reference to the manner in which Plaintiff expressed her concerns when discussing her decision to recommend Plaintiff's non-renewal (Doc. 28, PageID 309), when combined with the aforementioned temporal proximity of the email and the eventual non-renewal, satisfies the prima facie threshold for the causal connection element of a Title VII retaliation claim.

Because the Plaintiff's ability to establish the first and third elements are not contested, and because she has shown that a genuine issue of material fact exists as to the second and fourth elements, Plaintiff is able to establish a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964. As a result, the burden of proof now shifts to the Defendants to provide a legitimate and non-retaliatory rationale for Plaintiff's non-renewal.

Defendants argue that Plaintiff's contract was non-renewed because she "exercised poor professional judgment and engaged or exhibited conflicts when working cooperatively with others." Doc. 24, PageID 128-29. The Sixth Circuit has ruled that an employer noting an employee's "poor performance" qualifies as a legitimate reason for terminating employment and thus satisfies a defendant's burden following the establishment of a prima facie case. *Imwalle*, 515 F.3d at 546. In her deposition, Defendant Mallory noted instances of Plaintiff's failure to adequately cooperate with other teachers at weekly team meetings (Doc. 28, PageID 306), multiple conflicts with fellow intervention specialists and staff members, (Doc. 28, PageID 307), ongoing tension with Defendant Sample following an inability to work cooperatively (Doc. 28, PageID 308), as well as a lack of discretion regarding her use of oil in one of her students' hair without first checking with parent for permission. (Doc. 28 PageID 309). Defendant Mallory also exhibited concern for Plaintiff's alleged failure to follow "proper protocol", specifically that Plaintiff's email being sent directly to the superintendent and human resources director before the concern was brought to the school principal was not appropriate. Doc. 28, PageID 309. In so doing, Defendant Mallory does not directly refer to the content of the email sent by Plaintiff, but instead cites the way in which it was sent as the reason for its characterization as professionally inappropriate. Id. Defendant Bell corroborated some of Defendant Mallory's proffered rationale for Plaintiff's non-renewal, namely that Defendant Mallory had made him aware of the conflict between Plaintiff and another intervention specialist along with a failure to work cooperatively with colleagues. Doc. 27, PageID 260-61. Finally, Defendant Sample noted that there were "several occasions" where he had discussions with Plaintiff regarding late IEP completions. Doc. 26 PageID 157-59.

These purported reasons for Plaintiff's non-renewal, taken by the Court as Defendants so proffer, sufficiently qualify as legitimate reasons for Plaintiff's non-renewal separate from any alleged instance of retaliation. Because Defendants have met their burden of proof, the burden now shifts back to Plaintiff to show that Defendants' proffered reasons are mere pretext, wherein they must demonstrate either that the stated reasons have no basis in fact, are not the true reasons for Plaintiff's non-renewal, or that they insufficiently explain the Defendants' rationale. *Imwalle*, 515 F.3d at 545; *See Manzer*, 29 F.3d at 1084.

The Sixth Circuit has adopted a modified approach to the Seventh Circuit's use of the "honest belief" doctrine. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707-08 (6th Cir. 2006). Accordingly, in order for the employer's proffered reasons for the adverse employment action to be legitimate, it is not enough for the employer to simply have an honest belief in their stated rationale, but "the employer must [also] be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 808 (6th Cir. 1998).

Plaintiff has not offered any evidence showing that Defendants' decision not to renew her contract was based on the content of her email rather than the reasons proffered by Defendants related to Plaintiff's unsatisfactory showing of professionalism via the manner in which she shared her concerns. Furthermore, Plaintiff has not offered any evidence refuting Defendants' claims that she failed to follow proper communicatory protocol and that she inadequately collaborated with fellow staff members. As a result, Plaintiff has failed to meet her burden to demonstrate that Defendants' proffered reasons for her non-renewal were pre-textual, and so her claim does not survive this stage of the inquiry.

Even if there was a genuine dispute of material fact that would prevent the granting of summary judgment in the present matter, the individual Defendants in this case are correct in pointing out that the Rehabilitation Act "expressly provides that persons alleging retaliation…must look to the enforcement provisions of Title VII," and that "Title VII expressly forecloses a right of action against supervisors, in their individual capacities, for retaliation under the Rehabilitation Act." *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). As a result, supervisors who do not statutorily qualify as "employers" cannot be held liable under the anti-retaliation provisions of the Rehabilitation Act. *Id.* at 547. Defendants Sample, Bell, Mallory, and McCurdy all acted as supervisors of Plaintiff during their employment within the Trotwood Madison City School District, and therefore cannot be held personally liable under the Rehabilitation Act.

Defendants are also correct in stating that the Trotwood Madison School Board is the only named Defendant that can be found liable under the provisions of the Rehabilitation Act, as Ohio law states that "The board of education of each city, exempted village, local, and joint vocational school district and the governing board of each educational service center shall enter into written contracts for the employment and re-employment of all teachers." R.C. § 3319.08(a). Trotwood Madison City School District is therefore the only Defendant in this case that can be held liable under the Rehabilitation Act.

## III. Conclusion

Because there is no liability under the Rehabilitation Act for individual supervisors (*Hiler*, 177 F. 3d at 546), and because the individually-named Defendants in this case qualify as supervisors rather than employers, they cannot be held liable for the remedies sought by Plaintiff.

Therefore, Defendants' Motion for Summary Judgment relating to the liability of the individual Defendants is hereby **GRANTED**.

In regards to the remaining Motion for Summary Judgment on behalf of Trotwood-Madison City Schools, because Plaintiff is unable to sufficiently demonstrate that Defendants' proffered legitimate non-retaliatory reasons for her non-renewal were pre-textual, the Defendants' Motion for Summary Judgment is hereby **GRANTED**, and the action is dismissed with prejudice. Accordingly, this action is hereby **TERMINATED** upon the docket of this Court.

**DONE** and **ORDERED** in Dayton, Ohio, Tuesday, August 7, 2018. [1]

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges the valuable contribution and assistance of judicial intern Matthew S. Hauer in drafting this opinion.